UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 12-08948-8-RDD |
| JOE R. MURCHISON, | CHAPTER 13 |
| DEBTOR. | |

## MOTION FOR RELIEF FROM AUTOMATIC STAY OR FOR ADEQUATE PROTECTION

COMES NOW TCB Portfolio Acquisition, LLC ("TCB"), by and through its undersigned counsel, and moves the Court for an Order granting it relief from the automatic stay pursuant to 11 U.S.C. § 362(d) or for adequate protection pursuant to 11 U.S.C. § 361. In support of this Motion, TCB shows unto the Court the following:

1. This matter is a core proceeding pursuant to 28 U.S.C. § 157, and the Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334. The Court has the authority to hear this matter pursuant to the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina.

2. On December 19, 2012 ("Petition Date"), Joe R. Murchison ("Debtor") filed a voluntary petition for relief under chapter 13 of Title 11 of the United States Code, 11 U.S.C. § 101 et seq. ("Bankruptcy Code"). Richard M. Stearns was appointed to serve as Chapter 13 Trustee ("Trustee").

3. TCB is the holder or servicer of a Note ("Note"), executed by the Debtor on or about September 13, 2010 in the original principal amount of $72,197.00 with interest accruing at the rate of 12.00% per annum. TCB acquired its interest in the Note through its related entity, Engs Commercial Finance Co., which acquired the Note from Tennessee Commerce Bank via the FDIC. A copy of the Note is attached hereto as Exhibit A and incorporated herein by

reference.

4. The Note is secured by a Commercial Security Agreement signed by the Debtor that encumbers, among other items, a 2002 Kenworth T2000 Tractor, VIN IXKTD49X92J882599 ("Collateral"). TCB perfected its lien on the Collateral by noting its lien on the Collateral's Certificate of Title. The Collateral is property of the estate pursuant to 11 U.S.C. § 541. Copies of the Commercial Security Agreement and related Certificate of Title are attached hereto as Exhibit B and incorporated herein by reference.

5. The Note requires the Debtor to make monthly payments to TCB in the amount of $1,620.16. The Debtor has failed to make the regular monthly payments due to TCB, and the Debtor is in default for nine (9) monthly payments. As of the Petition Date, the total balance due under the Note was $55,290.33. Upon information and believe, the value of the Collateral is less than or equal to the amount of the indebtedness due under the Note. In his Motion to Modify Plan, the Debtor states his intention to voluntarily surrender the Collateral to TCB.

6. The Debtor's failure to make the required monthly payments due under the Note and his desire to voluntarily surrender the Collateral entitle TCB to relief from the automatic stay for cause pursuant to 11 U.S.C. § 362(d)(1). Cause exists for relief from the automatic stay because TCB's interests in the Collateral are not being adequately protected and there is a substantial risk of continuing loss to or diminution of the Collateral.

7. The automatic stay should be modified pursuant to 11 U.S.C. § 362(d)(2) because the Collateral is not necessary for an effective reorganization.

8. TCB does not have, and has not been offered, adequate protection within the meaning of 11 U.S.C. § 361 for its interest in the Collateral.

9. If TCB is not permitted to sell the Collateral, then TCB will suffer irreparable

injury, loss and damage by virtue of the decreasing value of the estate.

10. Sufficient cause exists to waive the requirements of Bankruptcy Rule 4001(a)(3) thereby giving full force and effect to the Order upon entry by the Court.

Wherefore, TCB prays for the Court to grant the following relief:

1. To enter an Order modifying the automatic stay imposed by 11 U.S.C. § 362 to allow TCB to repossess and liquidate the Collateral under its loan documents and in accordance with applicable law;

2. In the alternative, and in the event the Court determines that the automatic stay should remain in full force and effect, to enter an Order for the adequate protection of TCB's interests in the Collateral and to provide that the rights of TCB be fully protected;

3. To waive the requirements of Bankruptcy Rule 4001(a)(3) thereby giving full force and effect to the Order upon entry by the Court; and

4. To grant such other and further relief as the Court deems just an appropriate.

Dated: April 30, 2013         POYNER SPRUILL LLP

                              By:   /s/ Shannon E. Hoff
                                    Shannon E. Hoff
                                    NC State Bar Number 36206
                                    301 S. College Street, Suite 2300
                                    Charlotte, NC 28202
                                    Telephone: (704) 342-5250
                                    Facsimile: (704) 342-5264
                                    *Attorneys for TCB Portfolio Acquisition, LLC*



TENNESSEE Commerce Bank

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | [illegible] | [illegible] | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $72,197.00 | 09-13-2010 | 09-28-2015 | [illegible] | [illegible] | [illegible] | DWC | [illegible] |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** JOE R MURCHISON (SSN: 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)
3889 BRITT FARM ROAD
FARMVILLE, NC 27828

**Lender:** TENNESSEE COMMERCE BANK
381 Mallory Station Road, Suite 207
Franklin, TN 37067
(615) 599-2274

**Principal Amount: $72,197.00** **Date of Note: September 13, 2010**

**PROMISE TO PAY.** JOE R MURCHISON ("Borrower") promises to pay to TENNESSEE COMMERCE BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of Seventy-two Thousand One Hundred Ninety-seven & 00/100 Dollars ($72,197.00), together with interest on the unpaid principal balance from September 13, 2010, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 12.000% per annum based on a year of 360 days, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in 60 payments of $1,620.16 each payment. Borrower's first payment is due October 28, 2010, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on September 28, 2015, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT PENALTY.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Upon prepayment of this Note, Lender is entitled to the following prepayment penalty: Any prepayments of principal made by the Borrower will subject them to a prepayments penalty. The prepayment penalty fees are tiered and determined based on the elapsed time of the loan. Except for the foregoing, Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: TENNESSEE COMMERCE BANK, 381 Mallory Station Road, Suite 207, Franklin, TN 37067.

**LATE CHARGE.** If a payment is 15 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by 4.000 percentage points. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure..

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Tennessee without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Tennessee.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $15.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal represent

EXHIBIT
A
tabbies

## PROMISSORY NOTE
### (Continued)

Page 2

successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: TENNESSEE COMMERCE BANK 381 Mallory Station Road, Suite 207 Franklin, TN 37067.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

**BORROWER:**

X *[signature: Joe B. Murchison]*
JOE B. MURCHISON



TENNESSEE Commerce Bank

# COMMERCIAL SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
| --- | --- | --- | --- | --- | --- | --- | --- |
| $72,197.66 | 09-13-2010 | 09-28-2015 | [illegible] | [illegible] | [illegible] | TWO3 | [illegible] |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "*****" has been omitted due to text length limitations.

**Grantor:** JOE R MURCHISON (SSN: 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)
3889 BRITT FARM ROAD
FARMVILLE, NC 27828

**Lender:** TENNESSEE COMMERCE BANK
381 Mallory Station Road, Suite 207
Franklin, TN 37067
(615) 599-2274

THIS COMMERCIAL SECURITY AGREEMENT dated September 13, 2010, is made and executed between JOE R MURCHISON ("Grantor") and TENNESSEE COMMERCE BANK ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

2002 KENWORTH T2000 TRACTOR (Serial Number 1XKTD49X82J882589)

2003 UTILITY TRAILER (Serial Number 1UYVS25353G016612)

In addition, the word "Collateral" also includes all the following:

(A) All accessions, attachments, accessories, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender. This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Grantor may not be indebted to Lender.

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the authorized signer(s); (4) change in Grantor's principal office address; (5) change in Grantor's principal residence; (6) conversion of Grantor to a new or different type of business entity; or (7) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or principal residence will take effect until after Lender has received notice.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of Tennessee, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public

EXHIBIT
B
tabbies

**COMMERCIAL SECURITY AGREEMENT**
(Continued)

Page 2

office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. If Grantor changes Grantor's name or address, or the name or address of any person granting a security interest under this Agreement changes, Grantor will promptly notify the Lender of such change.

**GRANTOR'S RIGHT TO POSSESSION.** Until default, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**COMMERCIAL SECURITY AGREEMENT**
(Continued)

Page 3

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or ability to perform Grantor's obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Grantor, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or guarantor, endorser, surety, or accommodation party dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Tennessee Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to make application to a court of competent jurisdiction to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property prior to foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the Rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Tennessee without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Page 4

of Tennessee.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury.** All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means JOE R MURCHISON and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., the Tennessee Hazardous Waste Management Substances Act of 1988, T.C.A., 68-212-201, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means JOE R MURCHISON.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents. Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Agreement.

**Lender.** The word "Lender" means TENNESSEE COMMERCE BANK, its successors and assigns.

**Note.** The word "Note" means the Note executed by JOE R MURCHISON in the principal amount of $72,197.00 dated September 13, 2010, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED SEPTEMBER 13, 2010.

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**                                                                 Page 5

GRANTOR:

X _____ R. Murchison _____
R MURCHISON

LASER PRO Lending, Ver. 5.10.20.005 Copr. Harland Financial Solutions, Inc. 1997, 2010. All Rights Reserved - TX J:\LSANDC\PIL\PL6\E05.FC TR-440 PR-8

## ADDENDUM TO COMMERCIAL SECURITY AGREEMENT

This Addendum supplements and amends the Commercial Security Agreement dated 09/13/10 (the "Security Agreement") between Joe R. Murchison ("Grantor") and Tennessee Commerce Bank ("Lender"). To the extent of any conflict between the express terms of this Addendum and the Security Agreement, the terms of this Addendum shall control. Except as specifically amended hereby, the Security Agreement shall continue in full force and effect.

In addition to the requirements set forth in the Security Agreement, Lender shall have the right, but not the obligation to arrange insurance for its own interest ("Lender Insurance") in the event Grantor fails to comply with the terms of the Security Agreement. Lender shall have no obligation to provide any insurance or any information with regard to any Lender Insurance to Grantor. Any Lender Insurance arranged by Lender will insure Lender's interest only, will provide no insurance benefits to Grantor and will not release Grantor from any of its obligations to Lender under the Security Agreement. Grantor will be obligated to pay to Lender an amount due with respect to any Lender Insurance that may include some or all of the following (i) the cost of such Lender Insurance, including any insurance premiums, fees or costs, (ii) administrative or other fees that may represent profit to Lender; and (iii) any taxes, communication costs or other costs associated with arranging or providing Lender Insurance. Such required payments may be substantially in excess of premiums that Grantor would pay if it arranged insurance in compliance with the Security Agreement. Upon receipt of not less than thirty (30) days written notice and the furnishing of evidence of insurance complying with the Security Agreement, Lender agrees to and release Grantor from any liability with respect to future payments for Lender Insurance. Grantor agrees to arbitrate any dispute with Lender or its agents regarding any Lender Insurance purchased under this paragraph or any other transactions undertaken with respect to this paragraph under the rules of the American Arbitration Association in the City of Nashville, Tennessee.

NOTICE TO GRANTOR: Compliance with the insurance requirements of the Security Agreement will avoid additional expense.

**Executed simultaneously with Security Agreement**

GRANTOR:                                LENDER:

JOE R. MURCHISON                        TENNESSEECOMMERCE BANK

By: *Joe B. Murchison*                  By: *Shahnel Reilly*
Title: Owner                            Title: SO, Coll Mgr Sp Assets

{00067993:1 1037902.000003}

# STATE OF NORTH CAROLINA

MVR 191 (Rev 05/07)

## CERTIFICATE OF TITLE

| VEHICLE IDENTIFICATION NUMBER | YEAR MODEL | MAKE | BODY STYLE |
|---|---|---|---|
| 1XKTD49X92J882599 | 2002 | KW | TR |
| **TITLE NUMBER** | | **TITLE ISSUE DATE** | **PREVIOUS TITLE NUMBER** |
| 779266102723147 | | 10/07/2010 | 7726860909l7930 |

MAIL TO:

TENNESSEE COMMERCE BANK
361 MALLORY STATIION RD STE 105
FRANKLIN  TN  37067-8254

ODOMETER READING

ODOMETER STATUS

TITLE BRANDS

OWNER(S) NAME AND ADDRESS

JOE RUSSELL MURCHISON
3889 BRITT FARM RD
FARMVILLE  NC  27828-9237

The Commissioner of Motor Vehicles of the State of North Carolina hereby certifies that an application for a certificate of title for the herein described vehicle has been filed pursuant to the General Statutes of North Carolina and based on that application, the Division of Motor Vehicles is satisfied that the applicant is the lawful owner. Official records of the Division of Motor Vehicles reflect vehicle is subject to the liens, if any, herein enumerated at the date of issuance of this certificate.

As WITNESS, his hand and seal of this Division of the day and year appearing in this certificate as the title issue date.

COMMISSIONER OF MOTOR VEHICLES

FIRST LIENHOLDER:           DATE OF LIEN  09/13/2010
TENNESSEE COMMERCE BANK                           LIEN RELEASED BY:
361 MALLORY STATIION RD STE 105                   SIGNATURE_____
FRANKLIN   TN  37067-8254                          TITLE_____ DATE_____

SECOND LIENHOLDER:          DATE OF LIEN
                                                  LIEN RELEASED BY:
                                                  SIGNATURE_____
                                                  TITLE_____ DATE_____

THIRD LIENHOLDER:           DATE OF LIEN
                                                  LIEN RELEASED BY:
                                                  SIGNATURE_____
                                                  TITLE_____ DATE_____

FOURTH LIENHOLDER:          DATE OF LIEN
                                                  LIEN RELEASED BY:
                                                  SIGNATURE_____
                                                  TITLE_____ DATE_____

ADDITIONAL LIENS:                                                    83547547

147  TIC1477

**ANY ALTERATIONS OR ERASURES VOID TITLE**

Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

## A — FIRST RE-ASSIGNMENT OF TITLE BY REGISTERED OWNER

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address:

Name of Buyer: _____

Address of Buyer: _____

"I, seller(s) certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked."

ODOMETER READING (No Tenths): _____

- ❏ 1. The mileage stated is in excess of its mechanical limits.
- ❏ 2. The odometer reading is not the actual mileage. **WARNING - ODOMETER DISCREPANCY**

To my knowledge the vehicle described herein:
- Yes ❏ No ❏ Has been involved in a collision or other occurrence to the extent that the cost to repair exceeds 25% of fair market value.
- Yes ❏ No ❏ Has been a flood vehicle.
- Yes ❏ No ❏ Has been a reconstructed or a salvage vehicle.

Date vehicle delivered to purchaser: _____

Seller(s) Signature: _____
Seller(s) Hand Printed Name: _____
Date: _____ County: _____ State: _____

I certify that the following person(s) personally appeared before me this day, each acknowledging to me that he or she voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated: _____ seller(s)/name(s) of principal(s).

Notary Public Signature: _____
Notary's Printed or Typed Name: _____
My Commission expires: _____ (SEAL)

Buyer(s) Signature: _____
Buyer(s) Hand Printed Name: _____

## B — FIRST RE-ASSIGNMENT OF TITLE BY DEALER

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address:

Name of Buyer: _____

Address of Buyer: _____

"I, seller(s) certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked."

ODOMETER READING (No Tenths): _____

- ❏ 1. The mileage stated is in excess of its mechanical limits.
- ❏ 2. The odometer reading is not the actual mileage. **WARNING - ODOMETER DISCREPANCY**

To my knowledge the vehicle described herein:
- Yes ❏ No ❏ Has been involved in a collision or other occurrence to the extent that the cost to repair exceeds 25% of fair market value.
- Yes ❏ No ❏ Has been a flood vehicle.
- Yes ❏ No ❏ Has been a reconstructed or a salvage vehicle.

Date vehicle delivered to purchaser: _____

Dealer(s) Name: _____ Dealer #: _____
Dealer(s) Signature: _____
Dealer(s) Hand Printed Name: _____
Date: _____ County: _____ State: _____

I certify that the following person(s) personally appeared before me this day, each acknowledging to me that he or she voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated: _____ seller(s)/name(s) of principal(s).

Notary Public Signature: _____
Notary's Printed or Typed Name: _____
My Commission expires: _____ (SEAL)

Buyer(s) Signature: _____
Buyer(s) Hand Printed Name: _____

## C — PURCHASER'S APPLICATION FOR NEW CERTIFICATE OF TITLE

The undersigned purchaser of the vehicle described on the face of this certificate, hereby makes application for a new certificate of title and certifies that said vehicle is subject to the following named liens and none other and that the information contained herein is true and accurate to my best knowledge and belief.

**OWNER(S)**

Owner 1 DL#: _____ Full Legal name of Owner (First, Middle, Last, Suffix) or Company

Owner 2 DL#: _____ Full Legal name of Owner (First, Middle, Last, Suffix) or Company

Residence Address: _____

City: _____ State: _____ Zip Code: _____ Tax County: _____

Mail Address (if different from above): _____

**FIRST LIEN**
Date of Lien: _____ Account #: _____ Lienholder ID: _____
Lienholder Name: _____
Address: _____
City: _____ State: _____ Zip Code: _____

**SECOND LIEN**
Date of Lien: _____ Account #: _____ Lienholder ID: _____
Lienholder Name: _____
Address: _____
City: _____ State: _____ Zip Code: _____

I certify for the motor vehicle described herein that I have financial responsibility as required by law.

Insurance Company Authorized in NC: _____
Policy Number: _____
ODOMETER READING: _____

Signature of Owner(s): _____

Date: _____ County: _____ State: _____

I certify that the following person(s) personally appeared before me this day, each acknowledging to me that he or she voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated: _____ owner(s)/name(s) of principal(s).

Notary Public Signature: _____
Notary's Printed or Typed Name: _____
My Commission expires: _____ (SEAL)

**NOTE:** RETAIL PURCHASER MUST APPLY FOR NEW TITLE WITHIN 28 DAYS AFTER PURCHASE OR PAY STATUTORY PENALTY. ALTERATIONS OR ERASURES WILL VOID THIS TITLE.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

IN RE:

JOE R. MURCHISON,

    DEBTOR.

CASE NO. 12-08948-8-RDD

CHAPTER 13

NOTICE OF MOTION

The party represented by counsel below has filed papers with the court to move the Court for an order for relief from automatic stay.

<u>Your rights may be affected</u>. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)

If you do not want the Court to grant the order for relief from automatic stay or for adequate protection, or if you want the Court to consider your views on the motion, then on or before May 17, 2013, unless otherwise ordered, you or your attorney must file with the Court, pursuant to Local Rule 9013-1 and 9014-1, a written response, an answer explaining your position, and a request for hearing at:

United States Bankruptcy Court
1760-A Parkwood Blvd.
Wilson, NC 27893

If you mail your response to the Court for filing, you must mail it early enough so the Court will **receive** it on or before the date stated above.

You must also mail a copy to:

Shannon E. Hoff
Poyner Spruill LLP
301 S. College St., Suite 2300
Charlotte, NC 28202

Richard M Stearns, Esq.
Chapter 13 Trustee
1015 Conference Drive
Greenville, NC 27858

Allen C Brown
Allen C. Brown, PA
PO Drawer 1909
Winterville, NC 28590

Marjorie K. Lynch Esq.
Bankruptcy Administrator
1760-B Parkwood Blvd
Wilson, NC 27893

If a response and a request for hearing are filed in writing on or before the date set above, a hearing will be conducted on the motion at a date, time and place to be later set and all parties will be notified accordingly.

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion and may enter an order granting that relief.

Dated: April 30, 2013

POYNER SPRUILL LLP

By: /s/ Shannon E. Hoff
Shannon E. Hoff
NC State Bar Number 36206
301 S. College Street, Suite 2300
Charlotte, NC 28202
Telephone: (704) 342-5250
Facsimile: (704) 342-5264
*Attorneys for TCB Portfolio Acquisition, LLC*

## CERTIFICATE OF SERVICE

I, the undersigned, of Poyner Spruill LLP, hereby certify that I am, and at all times hereinafter mentioned was, more than eighteen (18) years of age and that on this day, I served a copy of the foregoing Motion for Relief from Automatic Stay or for Adequate Protection and Notice of Motion on:

Joe R Murchison
3889 Britt Farm Rd
Farmville, NC 27828

by depositing the same in the United States mail, first class, postage prepaid.

That on this day, the foregoing Motion for Relief from Automatic Stay or for Adequate Protection and Notice of Motion was served by electronic means through the court's CM/ECF service on:

Richard M Stearns, Esq.          Allen C Brown, Esq.
Chapter 13 Trustee               Allen C. Brown, PA
1015 Conference Drive            PO Drawer 1909
Greenville, NC 27858             Winterville, NC 28590

I certify under penalty of perjury that the foregoing is true and correct.

Dated: April 30, 2013                    POYNER SPRUILL LLP

                                By:      /s/ Shannon E. Hoff
                                         Shannon E. Hoff
                                         NC State Bar Number 36206
                                         301 S. College Street, Suite 2300
                                         Charlotte, NC 28202
                                         Telephone: (704) 342-5250
                                         Facsimile: (704) 342-5264
                                         *Attorneys for TCB Portfolio Acquisition, LLC*